UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-1251 JGB (SKx)** | Date | March 19, 2026 |
|---|---|---|---|
| Title | ***Jinhua Yang v. Fereti Semaia, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None | None |

**Proceedings:    Order: (1) GRANTING Petitioner's Ex Parte Application for a Temporary Restraining Order (Dkt. No. 3) (IN CHAMBERS)**

Before the Court is petitioner Jinhua Yang's ex parte application for a temporary restraining order.  ("Application," Dkt. No. 3.)  The Court finds this matter appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in relation to the Application, the Court **GRANTS** the Application.

## I.  BACKGROUND

On March 17, 2026, petitioner Jinhua Yang ("Petitioner") filed a petition for writ of habeas corpus.  ("Petition," Dkt. No. 1.)  Petitioner raises the following grounds for relief: (1) violation of the Fifth Amendment Due Process Clause; and (2) unlawful detention under 8 U.S.C. § 1226(a).  (See Petition.)

That same day, Petitioner filed the instant ex parte application for a temporary restraining order.  (Application.)  In support of the Petition, Petitioner filed her own declaration ("Yang Decl.," Dkt. No. 3.) and various attached exhibits relevant to the application.

On March 18, 2026, the Court ordered the Government to respond by March 19, 2026, at 12:00 p.m.  (Dkt. No. 6.)  On March 19, 2026, the Government timely responded, indicating the

Government's belief that Petitioner is a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) reconsideration granted in part, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), and amended and superseded on reconsideration, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025).[1]

## II.  FACTS

Petitioner is a citizen of China.  (Petition ¶ 1.)  Though her petition indicates that she is detained at the Imperial Regional Detention Facility in Calexico, California, she is in fact detained at the Adelanto ICE Processing Center.  See https://locator.ice.gov/odls/#/results.

Petitioner entered the United States without inspection on October 25, 2024.  (Petition ¶ 16.)  She was apprehended by Immigration and Customs Enforcement ("ICE") at that time. (Id.)  On October 26, 2024, the Department of Homeland Security ("DHS") issued Petitioner a notice to appear, placing Petitioner in removal proceedings.  (Id. ¶ 17.)  She was charged with removability under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i).  (Id.)  The same day, Plaintiff was released from custody on her own recognizance pursuant to INA § 236. (Id. ¶ 18.)  Following her release, Petitioner filed an application for asylum, which remains pending.  (Id. ¶ 19.)

Since her release, Petitioner has diligently and consistently complied with all reporting requirements, worked to support herself, paid taxes, and lived opening and peacefully in the community.  (Id. ¶ 20.)  She has no criminal history.  (Id.)

On March 3, 2026, Petitioner appeared for a routine check-in at an ICE office.  (Id. ¶ 21.) During that check-in, ICE took Petitioner back into custody and she has remained detained since. (Id.)  At no time prior to her re-detention was Petitioner notified that her release had been revoked or that she would be re-detained.  (Id. ¶ 23.)  She was not provided with a bond hearing or any opportunity to contest her detention beforehand.  (Id.)  When officers detained her, they did not present or show her any warrant authorizing her detention.  (Id.)

## III. LEGAL STANDARD

A temporary restraining order ("TRO") may be issued upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 61(b)(1)(A).  The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction.  See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th

---

[1] The Court notes that while Petitioner would appear to be covered by the Bond Eligible Class certified in Maldonado Bautista, this case also presents an instance of re-detention after release.  As such, the Court considers the case according to the Due Process implications of that scenario and not just as a Maldonado Bautista case.

Cir. 2006).  The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. <u>Lockheed Missile & Space Co. v. Hughes Aircraft Co.</u>, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008).  "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."  <u>Munaf v. Geren</u>, 553 U.S. 674, 690 (2008) (citations omitted).  An injunction is binding only on parties to the action, their officers, agents, servants, employees, attorneys, and those "in active concert or participation" with them.  Fed. R. Civ. P. 65(d).

Courts in the Ninth Circuit may consider the <u>Winter</u> factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  <u>All. for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the <u>Winter</u> test").

## IV.  DISCUSSION

To secure a TRO or a preliminary injunction, Petitioner must show that she is likely to succeed on the merits, likely to suffer irreparable harm, and that the balance of equities and the public interest tips in her favor.  <u>Winter</u>, 555 U.S. at 20.  Likelihood of success on the merits "is a threshold inquiry and is the most important factor."  <u>Env't Prot. Info. Ctr. v. Carlson</u>, 968 F.3d 985, 989 (9th Cir. 2020).  Because both parties have had an opportunity to file briefs, the Court construes the Application for a TRO as a motion for preliminary injunction.  <u>Synopsys, Inc. v. AzurEngine Techs., Inc.</u>, 401 F. Supp. 3d 1068, 1075 (S.D. Cal. 2019) ("Given this opportunity for briefing, the Court will instead construe [plaintiff's] request for a TRO as a motion for preliminary injunction.").

### A.      Likelihood of Success on the Merits

"Likelihood of success on the merits is a threshold inquiry and is the most important factor."  <u>Env't Prot. Info. Ctr. v. Carlson</u>, 968 F.3d 985, 989 (9th Cir. 2020).  Petitioner argues that her detention violates her Fifth Amendment Due Process Clause.  (Application at 9-14.) "Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause "protects."  <u>Zadvydas v. Davis</u>, 533 U.S. 678, 690 (2001).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  <u>Id.</u> at 693.  As a result, the government can only detain individuals outside of the criminal context in "certain

special and 'narrow' nonpunitive 'circumstances.'" Id. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

The Supreme Court has recognized that an individual on parole, which is analogous release on own recognizance with conditions, has a liberty interest under the Fourteenth Amendment's Due Process Clause requiring "some informal procedural guarantees." Morrissey v. Brewer, 408 U.S. 471, 482-83 (1972); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (extending Morrissey to probation revocation); Young v. Harper, 520 U.S. 143, 145 (1997) (extending Morrissey to Oklahoma's preparole program because it is also "a kind of parole"). This liberty interest exists even though a revocation of parole arises outside of the protections of criminal proceedings. Morrissey, 408 U.S. at 480. "[T]he loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process." Gagnon, 411 U.S. at 781. Further emphasizing that this liberty interest does not arise exclusively in the criminal context, the Supreme Court compared the right guaranteed to parolees to a "preliminary hearing" to that guaranteed to welfare recipients prior to the termination of their benefits. Morrissey, 408 U.S. at 485 (citing Goldberg v. Kelly, 397 U.S. 254, 267-271 (1970)). Although the Due Process Clauses of the Fifth and Fourteenth Amendments cannot always be read uniformly, see Fuld v. Palestine Liberation Org., 606 U.S. 1, 13 (2025), the Court is convinced that the liberty interest protecting parolees from revocation without a hearing applies with equal force to noncitizens on RORs under ATD conditions. See J.O.L.R., Petitioner, v. Minga Wofford, Mesa Verde ICE Processing Ctr. Facility Administrator, No. 1:25-CV-01241-KES-SKO (HC), 2025 WL 2908740, at *5 (E.D. Cal. Oct. 14, 2025) ("The Court finds that petitioner has a protected liberty interest in his release."); Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205 (9th Cir. 2022) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Thus, the Court finds that under the Fifth Amendment's Due Process Clause, Petitioner has a liberty interest in due process protections prior to re-detention following a grant of release on own recognizance.

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest. Under Mathews v. Eldridge, the Court considers three factors:[2] "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Under the first factor, courts have regularly described a petitioner's interest in remaining out of custody as "substantial." Diaz v. Kaiser, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025). The weight of the factor increases as a party remains on bond for an

---

[2] The Court follows the Ninth Circuit, which regularly employs Mathews v. Eldridge in the context of due process challenges in the immigration context. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

extended period.  Morrissey, 408 U.S. at 482.  Here, Petitioner was initially released on her own recognizance in October 2024.  (Yang Decl. ¶ 4.)  Thus, DHS released Petitioner on her own recognizance for approximately 16 months.  (Id.)  Petitioner's interest is significant.

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high, with no process offered to Petitioner during her re-detention—she "was not informed that [her] release had been revoked or that [she] would be re-detained. [She] was not given advance notice or any opportunity to contest [her] detention. ICE agents also did not show [her] any warrant authorizing [her] detention, nor did they provide [her] with any written document explaining why [her] release was being revoked."  (Id. ¶ 9.)  The risk of erroneous deprivation is heightened in the context of civil immigration detention, which must be "nonpunitive in purpose."  Zadyvdas, 533 U.S. at 690.

As to the third factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017).  The Government's previous decision to release Petitioner on her own recognizance demonstrates that the Government found that Petitioner was not a danger to the community and that her presence in future immigration proceedings could be "ensured by . . . alternative conditions."  Id.

Accordingly, the Court concludes that Petitioner has demonstrated a likelihood of success on the merits.

## B.    Irreparable harm

Petitioner is suffering irreparable harm because Petitioner is likely being detained in violation of her constitutional rights.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).

Furthermore, as the Ninth Circuit has explained, "immigration detention" results in "subpar medical and psychiatric care . . . , [] economic burdens . . . on detainees and their families . . . , and [] collateral harms to children of detainees."  Hernandez, 872 F.3d 976, 995 (9th Cir. 2017).  Therefore, Petitioner faces irreparable harm.

## C.    Balance of equities and public interest

Where the government is the opposing party, the balancing of the equities and the public interest merge.  See Nken v. Holder, 556 U.S. 418, 435 (2009).  Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. Winter, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." <u>Vargas v. Jennings</u>, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). And the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." <u>Zepeda v. U.S. Immigr. & Nat. Serv.</u>, 753 F.2d 719, 727 (9th Cir. 1983). Likewise, in the absence of an injunction, Petitioner is and will continue to experience prolonged detention and the resulting emotional harm. Therefore, the Court finds that the only reasonable relief is Petitioner's release.

Due to the minimal harm suffered by the Government, the Court will not require security.

## V.    CONCLUSION

For the reasons described above, the Court **GRANTS** the Application. Accordingly, the Court finds Petitioner is entitled to a preliminary injunction and **ORDERS** the Government to release Petitioner from its custody immediately.

**IT IS SO ORDERED.**